

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

JOHN R. KEARNEY M.D. EYE PHYSICIAN
AND SURGEON P.C.,                                  Chapter 11
                                                   Case No. 24-61035-6-pgr
                        Debtor.
_____

APPEARANCES:

BOND, SCHOENECK & KING, PLLC                       ANDREW SCOTT RIVERA, ESQ.
*Attorney for Debtor*
One Lincoln Center
Syracuse, New York 13202

WILLIAM K. HARRINGTON                              HARRISON E. STRAUSS, ESQ.
UNITED STATES TRUSTEE
11A Clinton Ave
Room 620 Albany, New York 12207

**MEMORANDUM-DECISION AND ORDER
GRANTING APPLICATION TO EMPLOY BOND, SCHOENECK & KING, PLLC AS
DEBTOR'S COUNSEL AND PERMITTING POST-PETITION RETAINER**

Presently pending is the Debtor's Application to Employ Bond, Schoeneck & King, PLLC ("Bond") as its counsel ("Application"). (Docket No. 59). The United States Trustee ("UST") filed a Limited Objection to the Application (Docket No. 67) arguing that Bond should not have accepted a post-petition retainer without a prior order of approval. Bond filed a response to the UST's Objection (Docket No. 76) and this Court held a hearing on the Application and heard oral argument on June 10, 2025, in Utica, New York, with counsel for the above-named parties appearing and being heard. As Debtor's Response was filed on the same day as the hearing, the UST was given permission to file a Reply, which was filed on June 24, 2025. (Docket No. 81). Decision was reserved.

1

For the following reasons, this Court finds that the post-petition retainer paid to Bond was not improper and may be retained, subject to Bond making a proper fee application.

## JURISDICTION

The Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

Debtor, an optometry practice located in Gloversville, New York, filed a petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code on December 26, 2024. At the time of filing, Debtor was represented by Attorney Maxsen Champion. A motion to dismiss was filed by the UST on February 26, 2025. (Docket No. 25). The hearing on the motion to dismiss was noticed for April 8, 2025.

Debtor engaged Bond to act as its bankruptcy counsel on March 15, 2025, and paid Bond an $18,000 retainer on that date. (Docket No. 59). On March 26, 2025, a Consent to Substitute Attorney was filed by Debtor, purporting[1] to substitute Bond for Mr. Champion. (Docket No. 33). On April 30, 2025, Bond filed the instant Application seeking to be retained as Debtor's counsel, *nunc pro tunc* to March 15, 2025. (Docket No. 59). Through the Application, Bond requests that this Court approve the post-petition retainer to be used as a credit towards post-petition fees and expenses to be awarded by the Court. *Id.*

On May 21, 2025, the UST filed a Limited Objection to the Application. (Docket No. 67). According to the UST, the payment of the retainer by the Debtor was a transfer of estate funds

---

[1] A debtor-in-possession may only employ an attorney with the Court's approval. 11 U.S.C. § 327(a); *see also In re T & D Tool, Inc.*, 125 B.R. 116, 119 (E.D. Pa. 1991) ("Section 327 is applicable to debtors in possession seeking appointment of counsel under § 1107.").

2

outside of the ordinary course of business that should not have been made without an order approving the transaction pursuant to § 363(b) of the Bankruptcy Code. The UST also argues that a post-petition retainer is inappropriate in this case.

In its Response, Bond clarifies that the retainer is being held in a client escrow account and will only be applied to fees and expenses approved by the Court after application and a hearing. (Docket No. 76). Bond also argues that the retainer is appropriate given the circumstances of this case.

In its Reply, the UST argues that by taking the retainer, Bond deprived the Debtor of funds that could have been used for reorganization. (Docket No. 81). The UST contends that requiring pre-approval of post-petition retainers allows the Court to consider whether the Debtor may be harmed by the payment and whether the Debtor is able to meet its ongoing post-petition obligations. The UST further notes that this Debtor is not a large business and argues that this case does not involve complex legal or factual issues that would justify a post-petition retainer.

## DISCUSSION

Section 363(b) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession may use estate property outside of the ordinary course of business upon "notice and a hearing." The UST argues that payment of a retainer constitutes a transfer of estate property outside of the ordinary course of business and, as such, it may not be accomplished without notice and a hearing under § 363(b).

There is no question that the Debtor used property of the estate to pay the retainer and that the payment was outside the ordinary course of business.

However, this Court finds the payment permissible because another section of the Bankruptcy Code authorizes it.

3

Section 328 (a) of the Code allows a debtor-in-possession to "employ ... a professional person ... on any reasonable terms and conditions of employment, *including on a retainer*, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328 (a)(emphasis added).

Although the Second Circuit has not addressed the interplay between § 328(a) and § 363(b), courts across the country have generally concluded that post-petition retainers are governed by, and permitted under, § 328 (a). *See, e.g., In re Soul Wellness LLC*, No. 24-23368-BKC-LMI, 2025 WL 1213300, at *2 (Bankr. S.D. Fla. Apr. 25, 2025)("The law is clear that the Court has discretion to authorize a post-petition retainer under 11 U.S.C. § 328(a)."); *In re Golden Fleece Beverages, Inc.*, No. 21 B 12228, 2021 WL 6015422, at *3 (Bankr. N.D. Ill. Nov. 24, 2021) ("Section 328 'does not modify the word 'retainer' with the adjective 'prepetition.'").

The UST has not provided any authority requiring a § 363(b) motion before a post-petition retainer may be paid by a debtor. The UST cites *In re Lavigne*, 183 B.R. 65, 71 (Bankr. S.D.N.Y. 1995), *aff'd*, 199 B.R. 88 (S.D.N.Y. 1996), *aff'd*, 114 F.3d 379 (2d Cir. 1997), but that case concerned cancellation of an insurance policy, rather than payment of a retainer.

This Court found one case, *Golden Fleece*, where the court determined that post-petition retainers were governed by § 363(b). *In re Golden Fleece Beverages, Inc.*, No. 21 B 12228, 2021 WL 6015422, at *4–*5 (Bankr. N.D. Ill. Nov. 24, 2021). Yet even in that case, the court authorized the retainer without requiring a separate motion under § 363. Instead, the court applied the "*Knudsen* factors" and found the post-petition retainer appropriate. *Id.* at *5.

Courts typically turn to the *Knudsen* factors when considering whether to approve post-petition payment arrangements. *In re Knudsen Corp.*, 84 B.R. 668, 671 (B.A.P. 9th Cir. 1988). In *Knudsen*, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") considered whether periodic

4

post-petition retainer payments to professionals were permitted under the Code. *Knudsen*, 84 B.R. at 671. The BAP concluded that the payments were permitted subject to final approval by the court. In coming to this conclusion, the BAP weighed the following factors:

> 1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;
> 2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;
> 3. The court is satisfied that counsel can respond to any reassessment . . . ; and
> 4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Id.* at 672-73.

While *Knudsen* has been followed by many courts, some have found *Knudsen*'s factors "too restrictive." *See In re Truong*, 259 B.R. 264, 267 (Bankr. D.N.J. 2001)("[T]he test is too restrictive for the broad range of retention terms permitted by Code § 328, which is restricted only by the reasonableness of the retention terms proposed by the applicant."); *see also In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992) ("While it is often the case that post-petition retainers and the ability to draw against such retainers are granted in large bankruptcy cases, and usually to large law firms, this Court sees no reason to treat smaller law firms any differently where the facts and circumstances of the case warrant the payment of a post-petition retainer. A smaller law firm can and often does face the same, or perhaps greater, burdens, costs, inconvenience, and financial strain, as does a larger firm if it is unable to receive a retainer.").

Many courts have also added their own factors to meet the needs of their cases. For example, in *Jefferson Business Center*, the court added the following five factors:

> (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the ability of the debtor to reorganize; (3) the amount and reasonableness of the retainer; (4) the reputation of debtor's counsel; and (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified.

*In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992); *see also In re Mariner Post-Acute Network, Inc.*, 257 B.R. 723, 731 (Bankr. D. Del. 2000) ("We also find that there may be other important factors which we have not specifically enumerated here."); *Golden Fleece*, 2021 WL 6015422, at *6 ("The *Knudsen* factors may be more or less important, and there may be other relevant factors, depending on the circumstances of the case.").

This Court agrees with those courts that hold these arrangements must be reviewed on a case-by-case basis and finds that § 328 permits a wide variety of payment arrangements that are "restricted only by the reasonableness of the retention terms." *Truong*, 259 B.R. at 267.

The UST cites *Soul Wellness* in support of its argument that a retainer is inappropriate in a case of this size. *In re Soul Wellness LLC*, No. 24-23368-BKC-LMI, 2025 WL 1213300, at *5 (Bankr. S.D. Fla. Apr. 25, 2025) ("The Court finds that there is nothing about the size and circumstances of this case that warrants a post-petition retainer.").

The facts of *Soul Wellness* are distinguishable. In *Soul Wellness*, debtor's counsel accepted a small prepetition retainer prior to filing the case with an agreement that the debtor would continue to provide monthly payments of $5000 (to be held in escrow) for the pendency of the case. *Id.* at *1. The Court determined that when counsel's pre-petition retainer was exhausted, she could file an interim fee application to mitigate her risk of not being paid. *Id.* at *6.

Unlike the attorney in *Soul Wellness*, Bond took this case on after it was filed and as it was on the verge of dismissal. (*See* Docket No. 25). Since coming into the case, Bond has filed Debtor's monthly operating reports, moved for continued use of Debtor's cash management system, for continued use of Debtor's bank accounts, to extend time to file a plan, and filed a Subchapter V plan. At the June 10, 2025 hearing, Bond advised the Court that Debtor will be

6

receiving an Employee Retention Tax Credit of $89,000 that will help ensure that Debtor can afford to fund a plan in this case.

In sum - Bond righted the ship. Absent the ability to obtain post-petition retainers from clients, attorneys may be unwilling (or less willing) to take over a case midstream. *See In re Chapel Gate Apartments*, 64 B.R. 569, 572 (Bankr. N.D. Tex. 1986) ("[I]t is neither surprising nor unreasonable that . . . retainers would be required before counsel would undertake the arduous task of guiding a debtor through a complicated reorganization laden with risk.").

In this case, Bond is seeking approval of a post-petition retainer in the amount of $18,000. (Docket No. 59 ¶ 13). This is a one-time payment. Bond is not asking the Court to approve monthly interim payments or an evergreen retainer.[2] Bond is not seeking to be paid from these funds prior to Court approval. The monies are being held in a client escrow account. (Docket No. 76 ¶ 2). The funds will not be applied towards any of Bond's fees unless and until a fee application is made and approved by the Court. *Id.* In the event the amount of fees eventually awarded is less than the retainer, Bond will refund the surplus to the estate. This Court takes judicial notice of Bond's status as a distinguished, well-established law firm that frequently and ably represents chapter 11 debtors before this Court.

Moreover, the Bankruptcy Code provides safeguards to prevent a windfall to debtor's counsel. Section 329 requires that compensation or agreements for compensation be disclosed to the Court regardless of the source of the payment. 11 U.S.C. § 329; *see also* Fed. R. Bankr. P. 2017(b) (allowing the Court to determine whether any post-petition payment of money or transfer

---

[2] The Court expresses no opinion as to whether evergreen retainers are appropriate in Subchapter V cases. *But see In re Raocore Tech., LLC*, No. 24-00065-ELG, 2025 WL 828880, at *8 (Bankr. D.D.C. Feb. 20, 2025) ("[I]t will be the truly rare subchapter V case that will be of a size and exceptional nature to warrant an evergreen retainer.").

7

of property to an attorney is excessive). Failure to disclose a post-petition retainer subjects counsel to disgorgement of all fees. *See In re Chatkhan*, 496 B.R. 687, 695 (Bankr. E.D.N.Y. 2012).

Additionally, § 329 allows the Court to review and cancel any payment arrangement and, to the extent that the payment is excessive, order its return. 11 U.S.C. § 329(b). Section 330 provides that professionals may be awarded "reasonable compensation" only after notice and a hearing and permits the Court to award less compensation than is requested. 11 U.S.C. § 330(a). Interim compensation is permitted only as provided by § 331 and any excessive interim compensation may be disgorged, pursuant to § 330(a)(5). This Court's Local Rule 2014-1 sets forth additional disclosure requirements and mandates that "no fees will be paid to the professional, including the use of any retainer received for post-petition services, without prior approval of the Court."

With these safeguards in mind, this Court does not find the retainer to be inappropriate in this case and concludes that the Debtor was not required to bring a § 363(b) motion prior to remitting the retainer. The funds shall remain in escrow pending approval of an application for fees on notice and a hearing.[3]

## CONCLUSION

For the foregoing reasons, this Court GRANTS Debtor's Application to Employ Bond (Docket No. 59).

Dated: July 15, 2025
Utica, New York

Patrick G. Radel
United States Bankruptcy Judge

---

[3] Mr. Rivera, the principal attorney assigned to this case, bills at $345 per hour. (Docket No. 59 ¶ 12). At this rate, Bond will deplete the retainer after 53 hours of work. If Bond's work does not justify a fee award of $18,000, the surplus will be returned to the estate.

8